THE STATE, EX REL. BROWN, *v.* SUMMIT COUNTY BOARD OF ELECTIONS ET AL.

[Cite as State, ex rel. Brown, *v.* Summit Cty. Bd. of Elections (1989),
46 Ohio St. 3d 166.]

(No. 89-1241—Submitted August 15, 1989—Opinion released October 25, 1989.)

*James E. Brown, pro se.*

*Lynn C. Slaby,* prosecuting attorney, and *William E. Schultz,* for respondent Summit County Board of Elections.

*L. James Martin,* for respondent city of Stow.

*Per Curiam.* Relator challenges the constitutionality of Section 4.03 of the Stow Charter as being in violation of the equal protection provisions set forth in the First and Fourteenth Amendments to the United States Constitution and in Section 2, Article I, and Section 26, Article II of the Ohio Constitution.

We hold the durational residency requirement of the Stow Charter to be constitutional.

"In order to grant a writ of mandamus, a court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law." *State, ex rel. Westchester Estates, Inc.,* v. *Bacon* (1980), 61 Ohio St. 2d 42, 15 O.O. 3d 53, 399 N.E. 2d 81, paragraph one of the syllabus.

Respondents contend that mandamus is not an appropriate remedy. In *State, ex rel. Smart,* v. *McKinley* (1980), 64 Ohio St. 2d 5, 18 O.O. 3d 128, 412 N.E. 2d 393, we held that since an election was one week away a mandamus action was appropriate because an appellate process would last well past the election and that a writ of mandamus may issue to compel a board of elections to put a name on a ballot. Moreover, in *State, ex rel. Michaels,* v. *Morse* (1956), 165 Ohio St. 599, 608, 60 O.O. 531, 535, 138 N.E. 2d 660, 666, we held that mandamus is appropriate to challenge the constitutionality of a statute. Accordingly, the constitutionality of a city charter section may also be challenged by mandamus.

Respondents also argue that relator has an adequate remedy at law by appealing under R.C. Chapter 2506 (appeals from decisions of agencies of political subdivisions). The board of elections refuses to certify relator's nominating petition under R.C. 3513.262.[1] In *State, ex rel. Moss,* v. *Bd. of Elections* (1980), 69 Ohio App. 2d 115, 23 O.O. 3d 324, 432 N.E. 2d 210, the Court of Appeals for Franklin County reasoned that such an appeal was not authorized because (1) R.C. 3513.262 expressly provides that such decisions of boards of elections shall be final, and (2) under prior decisions of this court, boards of elections are not "political subdivisions" under R.C. Chapter 2506. We adopt such reasoning.

Also, in *State, ex rel. Tulley,* v. *Brown* (1972), 29 Ohio St. 2d 235, 58 O.O. 2d 489, 281 N.E. 2d 187, we held that a relator need not follow a "suicidal course" under the ordinary-course-of-law doctrine. See, also, *Smart, supra,* at 7, 18 O.O. 3d at 129, 412 N.E. 2d at 394. In the instant case the primary election is scheduled for September 12, 1989, and even if an appeal were appropriate, the issue here

---

[1] R.C. 3513.262 provides in part: "* * * Upon the filing of such protest, the election officials with whom it is filed shall promptly fix the time and place for hearing it, and shall forthwith mail notice of the filing of such protest and the time and place for hearing it to the person whose nomination is protested. They shall also forthwith mail notice of the time and place fixed for the hearing to the person who filed the protest. At the time fixed, such election officials shall hear the protest and determine the validity or invalidity of the petition. Such determination shall be final. * * *"

would not be resolved until after the election. In *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 147, 228 N.E. 2d 631, paragraph one of the syllabus, we stated that a mandamus action will lie where a public officer or agency is under a clear legal duty to perform an official act and there is no adequate remedy in the ordinary course of the law. The board of elections in this case was merely following the residency requirement of the Stow Charter and, at the time of its ruling, had no clear duty to place the name of the relator on the ballot because it could not declare a city charter section unconstitutional. However, if we determine that the charter section in question is unconstitutional, then the duty of the board of elections to place the name of the relator on the ballot will relate back to the time relator filed his nominating petition and a writ of mandamus will properly issue.

Relator essentially asserts that the two-year residency requirement of the Stow Charter is unconstitutional under the Equal Protection Clause in that it creates an invidious classification impinging upon his fundamental right to travel and his right of association. In considering this equal-protection challenge to the Stow Charter durational residency requirement, we must determine whether the classification created by the requirement affects a fundamental constitutional right. If a fundamental constitutional right is affected, the burden will be on the government to prove that the classification is necessary to promote a compelling governmental interest. *Dunn* v. *Blumstein* (1972), 405 U.S. 330. If we determine that a fundamental constitutional right is not involved, then the burden is on the party asserting that the classification is unconstitutional, and the statute will be upheld if it bears a rational relationship to a legitimate state goal. See *Kramer* v. *Union Free School Dist.* (1969), 395 U.S. 621, 627-628; *Bullock* v. *Carter* (1972), 405 U.S. 134, 144.

In *Akron* v. *Bell* (C.A. 6, 1981), 660 F. 2d 166, the Sixth Circuit Court of Appeals held that a one-year residency requirement for a candidate for city council did not violate rights to equal protection and to travel and was rationally related to a legitimate state purpose. The court went on to state that even if a compelling state interest test were to be used, the restriction would be constitutional. The court overruled its decision in *Green* v. *McKeon* (C.A. 6, 1972), 468 F. 2d 883, in which it held that a two-year residency requirement for the position of city commissioner violated the Equal Protection Clause of the Fourteenth Amendment because it created a classification that restricted the right to travel, and that such a residency requirement was to be viewed with strict scrutiny.

The Sixth Circuit Court reversed *Green* because of the United States Supreme Court's summary affirmances in *Chimento* v. *Stark* (1973), 414 U.S. 802, and *Sununu* v. *Stark* (1975), 420 U.S. 928, in which durational residency requirements of seven years for state senator and seven years for governor were held not to violate the Equal Protection Clause.

Assuming *arguendo* that relator's rights of travel and association are affected by the Stow Charter residency requirement, we hold that, whatever effect this requirement may have, it is so minimal that the high standard of review of strict scrutiny need not be applied.

Relator is not precluded from ever running for city councilman. He is only required to be a resident of the particular ward for two years. "The pur-

pose of a residency requirement is to insure the voters the opportunity to become acquainted with the candidate's ability, character, personality, and reputation and, secondarily, to ensure that the candidate have the opportunity to know the customs and mores of the people." *Hatcher* v. *Bell* (Tenn. 1974), 521 S.W. 2d 799, 803-804.

The United States Supreme Court in *Zobel* v. *Williams* (1982), 457 U.S. 55, citing *Chimento, supra,* stated that length of residence may bear some rational relationship to a very limited number of state purposes. We hold that a two-year durational residency requirement for the office of city councilman bears a rational relationship to a legitimate state (city) purpose to ensure knowledgeable candidates and does not violate the Equal Protection Clause of the Fourteenth Amendment.

Residency statutes affecting the right to travel will be upheld unless they *penalize* some basic necessities of life such as welfare benefits, *Shapiro* v. *Thompson* (1969), 394 U.S. 618, or nonemergency medical care, *Memorial Hospital* v. *Maricopa County* (1974), 415 U.S. 250, or some other fundamental right such as the right to vote, *Dunn* v. *Blumstein, supra.*

However, we do not imply that durational residency requirements will automatically be upheld by this court. It is conceivable that such a requirement may be too long in duration to serve a legitimate state interest. In the instant case, Stow's two-year residency requirement does not significantly affect relator's freedom to travel interstate or to associate with others. The relationship between the right to travel and the two-year residency requirement to hold this office is too tenuous to warrant applying the strict scrutiny test.

We hold that the city of Stow has a legitimate interest in imposing a two-year residency requirement for the office of city councilman and that the requirement is rationally related to a legitimate state (city) purpose. Whatever effect this requirement has on relator's right to travel interstate is "too attenuated to warrant invocation of the strict standard of review." *Antonio* v. *Kirkpatrick* (C.A. 8, 1978), 579 F. 2d 1147, 1149; see *Wise* v. *Lentini* (La. App. 1979), 374 So. 2d 1286. The requirement does not violate the Fourteenth Amendment to the Constitution of the United States, or Section 2, Article I, or Section 26, Article II of the Ohio Constitution.

Accordingly, relator has no clear right to the relief sought. The motion to dismiss is overruled and the writ of mandamus is denied.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES, H. BROWN and RESNICK, JJ., concur.

DOUGLAS and WRIGHT, JJ., dissent.