O’Connor, C.J.,
concurring in judgment only.
*376 {¶ 25} I concur in the judgment of the court that relators are not entitled to a writ of mandamus.[2] However, the opinion adopted by a plurality of the court employs the wrong legal standard to decide the ease. I therefore write separately to clarify the constitutional issues at play in this case.
{¶ 26} We first considered the constitutionality of R.C. 3513.04 in State ex rel. Purdy v. Clermont Cty. Bd. of Elections, 77 Ohio St.3d 338, 673 N.E.2d 1351 (1997). As written at the time, R.C. 3513.04 operated to prevent unsuccessful primary candidates from seeking election to a different office in the same election cycle, with no exceptions. The relators in Purdy challenged the statute as violating ballot-access rights protected by the First and Fourteenth Amendments to the United States Constitution. Id. at 341.
{¶ 27} To decide the case, we applied the “modified balancing test” adopted by the United States Supreme Court in Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), and Burdick v. Takushi, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). Purdy at 342-343. We held that R.C. 3513.04 was constitutional because it imposed only a “slight” burden on First and Fourteenth Amendment rights, which was outweighed by legitimate state interests promoted by the law. Id. at 346.
{¶ 28} The constitutionality of R.C. 3513.04 is before us again because the statute was modified in 1998 and subsequent years. The statute previously allowed no exceptions; the amended law now permits “sore-loser” candidates to launch second-chance campaigns for some, but not all, nonpartisan offices.
No person who seeks party nomination for an office or position at a primary election * * * shall be permitted to become a candidate by nominating petition * * * at the following general election for any office other than the office of member of the state board of education, office of member of a city, local, or exempted village board of education, office of member of a governing board of an educational service center, or office of township trustee.
(Emphasis added for new material since 1997.)
{¶ 29} The addition of a limited pool of exempt offices to R.C. 3513.04 raises two distinct constitutional questions, which the parties’ briefs unfortunately conflate. The obvious question is whether the exceptions create an equal-protection problem, an issue that was not before the Purdy court. But this case also requires us to revisit the question whether the statute, as amended, *377 continues to promote state interests sufficient to outweigh the burden on relators’ First and Fourteenth Amendment ballot-access rights.
First Amendment rights: Anderson/Burdick balancing
{¶ 30} Ballot-access restrictions place burdens on two different, but overlapping, rights enjoyed by electors such as relators Clifford Henry and Michael Vandervort: “the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.” Williams v. Rhodes, 393 U.S. 23, 30, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968). These rights are protected against state encroachment by the First and Fourteenth Amendments. Id. at 30-31. The First Amendment also protects the parallel rights of candidates, such as relator Thomas Brown, affected by ballot-access regulations. “[BJallot access eases based on First Amendment grounds have rarely distinguished between the rights of candidates and the rights of voters.” Cook v. Gralike, 531 U.S. 510, 531, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2001) (Rehnquist, C.J., concurring in judgment), citing Bullock v. Carter, 405 U.S. 134, 143, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972).
{¶ 31} To assess the constitutionality of a ballot-access law under the First Amendment, a reviewing court engages in the balancing inquiry described in Anderson and Burdick. Anderson/Burdick balancing is a “two-step” inquiry. See Navarro v. Neal, 716 F.3d 425, 430 (7th Cir.2013); Coalition for Free & Open Elections, Prohibition Party v. McElderry, 48 F.3d 493, 497 (10th Cir.1995).
{¶ 32} First, the court must “consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.” Anderson, 460 U.S. at 789, 103 S.Ct. 1564, 75 L.Ed.2d 547. Second, the court must weigh the character and magnitude of that constitutional injury against “ ‘the precise interests put forward by the State as justifications for the burden imposed by its rule.’ ” Burdick, 504 U.S. at 434, 112 S.Ct. 2059, 119 L.Ed.2d 245, quoting Anderson at 789.
{¶ 33} The magnitude of the burden determines the appropriate level of scrutiny the statute will receive. Purdy, 77 Ohio St.3d at 343, 673 N.E.2d 1351; Burdick at 434. If an election regulation severely burdens the plaintiffs rights, then the statute is subject to strict scrutiny, which is to say the regulation must be narrowly drawn to advance a compelling state interest. Burdick at 434. In all other cases, where the ballot-access regulation imposes some burden on First Amendment rights, however minimal, the court must weigh those burdens against the interest asserted by the state. “However slight [the] burden [that a state law imposes] may appear, * * * it must be justified by relevant and legitimate state interests ‘sufficiently weighty to justify the limitation.’ ” Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 191, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (lead *378 opinion), quoting Norman v. Reed, 502 U.S. 279, 288-289, 112 S.Ct. 698, 116 L.Ed.2d 711 (1992); see also Crawford at 211 (Souter, J., dissenting).
Equal protection: Anderson/Burdick balancing
{¶ 34} Equal protection applies not just to the initial allocation of the franchise, but also to the manner of its exercise. Bush v. Gore, 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000). The court made clear in Crawford that equal-protection election challenges are subject to the same Anderson/Burdick analysis as are First Amendment ballot-access challenges. See Northeast Ohio Coalition for the Homeless v. Husted, 696 F.3d 580, 592 (6th Cir.2012).
{¶ 35} The state argues that rational-basis review should apply because the classifications at issue are neutral. The state’s position misconstrues the law. Rational-basis review applies to laws that draw nondiscriminatory classifications and impose no burden on the right to vote. McDonald v. Bd. of Election Commrs. of Chicago, 394 U.S. 802, 807-809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969). But where a plaintiff alleges that the state has burdened voting rights through disparate treatment, the Anderson/Burdick balancing test is applicable. Obama for Am. v. Husted, 697 F.3d 423, 429 (6th Cir.2012).

The plurality erroneously utilizes rational-basis scrutiny

{¶ 36} Despite paying lip service to the Anderson/Burdick test, the plurality proceeds to analyze the statute under a conventional “rational basis” standard that affords “substantial deference” to the legislature. State v. Williams, 88 Ohio St.3d 513, 531, 728 N.E.2d 342 (2000). Consistent with this standard, the plurality opinion rejects relators’ challenge because the record will not permit the court “to definitively state that the legislature lacked any basis for its actions.” Plurality opinion at ¶ 20.[3]
{If 37} However, rational-basis review is not appropriate in ballot-access cases. In Crawford, the United States Supreme Court rejected the suggestion that Burdick allows for any “deferential” standard for a state’s important regulatory interests. 553 U.S. at 190, 128 S.Ct. 1610, 170 L.Ed.2d 574, fn. 8. Thus, traditional rational-basis review does not apply to the review of ballot-access statutes. Price v. New York State Bd of Elections, 540 F.3d 101, 108-109 (2d Cir.2008); Am. Civ. Liberties Union of New Mexico v. Santillanes, 546 F.3d 1313, 1321-1322 (10th Cir.2008); Rogers v. Corbett, 468 F.3d 188, 194 (3d Cir.2006); see also Credico v. New York State Bd. of Elections, E.D.N.Y. No. 10 CV 4555, 2013 WL 3990784 (Aug. 5, 2013), *20 (“The Court should not apply rational basis review to a challenged law that burdens First Amendment rights *379 * * *»). Green Party of Arkansas v. Daniels, 733 F.Supp.2d 1055, 1062 (E.D.Ark.2010) (review of a ballot-access restriction that imposes minimal burdens “is not the rational-basis inquiry advocated by the State”); Am. Assn, of People with Disabilities v. Herrera, 580 F.Supp.2d 1195, 1216 (D.N.M.2008) (“a district court, to be faithful to the Supreme Court’s language and standard in Anderson v. Celebrezze, must be careful not to transform the Anderson test into a de facto form of strict scrutiny or rational basis test, but must carefully and faithfully apply the two stages that the Anderson test requires”).
{¶ 38} The more serious legal error in the plurality opinion lies in its misallocation of the burden of proof. Traditional rational-basis review imposes no burden upon the state to prove that the legislation is justified. Williams, at 531. Rather, the burden falls upon the party challenging the legislation “ ‘to negative every conceivable basis which might support it.’ ” State v. Thompson, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 27, quoting Madden v. Kentucky, 309 U.S. 83, 88, 60 S.Ct. 406, 84 L.Ed. 590 (1940). The plurality opinion reflects this standard. Plurality opinion at ¶ 21 (“It is not sufficient for relators to cast doubt on the constitutionality of this statute, nor is it the Attorney General’s burden to prove the statute constitutional; rather, relators must show beyond a reasonable doubt that R.C. 3513.04 is unconstitutional” [emphasis added]).
{¶ 39} This is simply an incorrect statement of law. Anderson instructs courts to weigh “the precise interests put forward by the State as justifications for the burden imposed by its rule.” (Emphasis added.) Anderson, 460 U.S. at 789, 103 S.Ct. 1564, 75 L.Ed.2d 547. “The State need not provide empirical evidence justifying its interest; however, the State cannot rely on hollow or contrived arguments as justifications.” Trudell v. State, 193 Vt. 515, 2013 VT 18, 71 A.3d 1235, at ¶ 21; Price v. New York State Bd. of Elections, 540 F.3d at 110. Thus, the state plainly has a burden to proffer justifications for the law, along with an explanation of how the law satisfies that state interest.
{¶ 40} The plurality’s attempt to distinguish this case based on the specific relief sought — mandamus—ignores 20 years of jurisprudence from this court. In Purdy, we discussed the fact that the relief sought was closer in nature to declaratory judgment and prospective injunction, because in order to establish his “clear right to relief,” the relator first needed a declaration that the statute was unconstitutional. Purdy, 77 Ohio St.3d at 341-342, 673 N.E.2d 1351. However, we held that it was permissible in limited circumstances, especially in elections matters, to seek mandamus instead of declaratory judgment. Id. at 341 (“certain election matters may present extraordinary circumstances. In this regard, declaratory judgment might not provide an adequate remedy in the ordinary course of law”).
*380 {¶ 41} The plurality opinion cites absolutely no authority for its proposition that because this case arises in mandamus, relators must satisfy a greater burden to secure ballot access. And in fact, there is no such authority. Relators established that the statute burdened their constitutional rights and that the state could present no justification for that burden. Based on Crawford, Bur-dick, Anderson, and our own decisions, by prevailing on these points, relators established a clear legal right to relief.
{¶ 42} At the heart of the plurality opinion lies a great mystery: what greater showing could relators muster to overcome the plurality’s agnosticism?
{¶ 43} Of greater concern is the plurality’s complete lack of comprehension of what constitutes a ballot-access law. The plurality opinion clings to the fiction that it is only the pre-1998 statute that deals with ballot access, whereas “nothing in the posN1998 amendments to the statute * * * burden[s] the right to vote or access to the ballot,” as if the two functioned independently.
{¶ 44} This argument is a celebration of form over substance. Apparently, if the statute were drafted to say that “no one is subject to the sore-loser restriction except county court candidates,” the plurality would recognize the change as a ballot-access restriction. But because the law is written inversely, to say who may run a second-chance campaign instead of who may not, it ceases to be a ballot-access limitation, even though it achieves exactly the same result.
{¶ 45} Moreover, the plurality’s determination to divorce this case from its election-law roots, so as to employ a conventional “rational-basis” analysis, ignores the fact that Crawford occupies the field when it comes to elections laws. “To evaluate a law respecting the right to vote — whether it governs voter qualifications, candidate selection, or the voting process — we use the approach set out in Burdick * * *.” Crawford, 553 U.S. at 204, 128 S.Ct. 1610, 170 L.Ed.2d 574 (Scalia, J., concurring). To pretend that this case is something other than an elections case governed by Anderson/Burdick is to deny the obvious.

Legal analysis

{¶ 46} The state has made no effort to satisfy its burden to put forward justifications for the burdens imposed by amended R.C. 3513.04. Instead, the state offers mere speculation. “[T]he legislature could rationally have decided that the risks associated with second-chance/sore-loser candidacies (and the overall effect on Ohio’s electoral integrity) are lessened within the context of educational and/or highly localized positions.”
{¶ 47} The notion that boards of education are somehow immune from intraparty conflict is unsupported by evidence, experience, or common sense. To the contrary, boards of education, like every other elected office, are susceptible to the same partisan and political maneuvering that the “sore-loser” statute is *381 designed to prevent. And “highly localized position” is an apt description of the judicial seat for the western division of Ashtabula County.
{¶ 48} Alternatively, the attorney general offers an argument in defense of the statute that is even more speculative and unconvincing: “the legislature could also reasonably think that there was more need to encourage and incentivize candidacy for such positions.” A hypothetical desire to “incentivize” people to serve on school boards should not outweigh Brown’s First Amendment rights, at least not in the absence of any evidence that R.C. 3513.04 was causing an actual shortage of candidates for these positions.
{¶ 49} The undeniable fact is that the decision to exempt some, but not all, nonpartisan offices from the “sore-loser” statute was arbitrary. There appears to be no articulable reason why these offices were selected or why others were omitted. And when it comes to election laws, it is precisely this sort of arbitrary regulation that the Equal Protection Clause of the United States Constitution forbids.
{¶ 50} In addition, the statute, as amended, no longer justifies the burden on relators’ First Amendment rights. The plurality suggests that the amendments have lessened the burden, insofar as more offices are now available to second-chance candidates. But as applied to Brown, as a candidate for this particular judicial office, the burden remains the same.
{¶ 51} Moreover, even if the “slight” burden has now become “slighter,” it must still be outweighed by some legitimate state interest that the law furthers. The interests that were deemed adequate in Purdy — avoiding confusion caused by second-chance candidates — no longer has force when second-chance candidates are able to run for some, though not all, offices in the general election.
{¶ 52} The plurality speculates that confusion could result from a second-chance candidate such as Brown seeking a judicial office in the primary and then a different judicial office in the general election. The plurality notes that the same risk of confusion does not exist for second-chance candidates for state board of education, because nomination for that position is by petition only, not by primary. R.C. 3513.259.
{¶ 53} The flaw in this argument is that primaries are possible, though not automatic, for all the other positions listed in the exception portion of R.C. 3513.04. Trustee offices can be subject to primary election if a majority of the electors petitions for a primary. R.C. 3513.253. And a board of education of a city, local, or exempted village school district or governing board of an exempted educational service may establish a nonpartisan primary by resolution. R.C. 3513.256(A). So the same possibility of confusion exists with second-chance candidates running for one board of education in a primary and a different board of education in the general election.
*382 {¶ 54} Even though the burden on relators’ constitutional rights is slight, the state has not presented any interest to justify the distinction drawn by the amended statute. I would therefore hold that the language added to R.C. 3513.04 renders the statute unconstitutional.

Remedy

{¶ 55} Having determined that R.C. 3513.04 is unconstitutional, I address the question of remedy.
{¶ 56} The dissent agrees that amended R.C. 3513.04 is unconstitutional and would therefore grant the writ and place Brown’s name on the general election ballot. But there is no explanation for how this result has been reached. Rewriting the statute to include county courts on the list of excepted offices would be an exercise of power that this court does not possess. So the only alternative is that the dissent must consider R.C. 3513.04 unconstitutional in its entirety, but the dissent has not established that such a broad remedy is necessary.
{¶ 57} R.C. 1.50 provides that statutory provisions are presumptively severable. The test of severability is “ ‘whether the remaining parts of the article, standing alone and without reference to the unconstitutional sections, can be effective and operable.’ ” State ex rel. Doersam v. Indus. Comm., 45 Ohio St.3d 115, 121, 543 N.E.2d 1169 (1989), quoting State ex rel. King v. Rhodes, 11 Ohio St.2d 95, 101, 228 N.E.2d 653 (1967). The remainder of R.C. 3513.04 is plainly capable of standing alone without the arbitrary list of exemptions that have created the constitutional problem.
{¶ 58} I would therefore strike the language added in the 1998 amendment and return to the statute that existed at the time that this court decided Purdy, 77 Ohio St.3d 338, 673 N.E.2d 1351. And once this is done, the pyrrhic nature of Brown’s victory becomes apparent. R.C. 3513.04 would still bar Brown from the November ballot; even though his constitutional argument is meritorious, he would nevertheless not be entitled to a writ of mandamus.
{¶ 59} For these reasons, I concur in the judgment reached by the plurality.
Lanzinger, J., concurs in the foregoing opinion.

. I join the portion of the plurality opinion analyzing — and rejecting — the applicability of laches.

. To ask whether the state had “any ” basis to justify the statute arguably imposes an even more permissive standard of review than rational-basis scrutiny.