[This opinion has been published in *Ohio Official Reports* at 88 Ohio St.3d 239.]

THE STATE EX REL. WATSON *v.* HAMILTON COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 2000-Ohio-318.]

*Mandamus to compel Hamilton County Board of Elections and its members to certify relator as the Democratic candidate for Hamilton County Sheriff on the March 7 primary election ballot and for a judgment declaring R.C. 311.01(B)(9) unconstitutional—Writ denied.*

(No. 00-249—Submitted February 22, 2000—Decided February 28, 2000.)

IN MANDAMUS.

———————————

{¶ 1} On January 3, 2000, relator, Brian Watson, filed an application with the administrative judge of the Hamilton County Court of Common Pleas to be a candidate for Sheriff of Hamilton County, Ohio. On January 6, the administrative judge issued an entry in which he determined that Watson was an eligible candidate for Hamilton County Sheriff. On January 7, Watson filed his declaration of candidacy and nominating petition with respondent Hamilton County Board of Elections to become a candidate for the Democratic Party nomination for Hamilton County Sheriff on the March 7 primary election ballot.

{¶ 2} On January 12, Saundra Stehlin, a Democratic Party elector eligible to vote in the March 7 primary election, filed a written protest against Watson's candidacy under R.C. 3513.05. In her protest, Stehlin claimed that Watson failed to satisfy the sheriff-candidate eligibility requirements of R.C. 311.01(B)(9).

{¶ 3} On January 31, the board held a hearing on the protest at which Watson conceded that he had never been a peace officer at the rank of corporal or above during his employment with the Hamilton County Sheriff's Office from August 15, 1991 to December 3, 1997. During this period, he worked in the

position of corrections officer with the intake division as well as the positions of patrol clerk and patrol officer with the patrol division. There is no rank of corporal in the intake division, but there is that rank in the patrol division, which includes the following positions from lowest to highest rank: patrol clerk, patrol officer, corporal, sergeant, lieutenant, captain, and sheriff. Watson failed the examination required for promotion from patrol officer to corporal.

{¶ 4} Although Watson was never a peace officer at the rank of corporal or above, he had the following supervisory experience at the designated ranks in the five-year period before the R.C. 311.01(H)(1) qualification date of January 7, 2000:

January 12, 1995—April 8, 1996: Patrol Clerk. Watson was the senior officer in charge of training during his shift.

January 1, 1998—March 1998 and August 1998—December 3, 1999: Patrol Officer. Watson was the senior patrol officer on his shift. He directed other officers in their work, including officers at crime and accident scenes.

December 1995, 1997, and 1998: Patrol Officer. Watson was assigned to traffic duty at a local mall, where he supervised other patrol officers, corrections officers, and auxiliary officers assigned to traffic posts.

{¶ 5} At the conclusion of the hearing, the four-member, bipartisan board unanimously sustained the protest and declared Watson ineligible to be placed on the March 7 primary election ballot. The board concluded that Watson lacked the supervisory experience required by R.C. 311.01(B)(9)(a).

{¶ 6} On February 4, Watson filed this expedited election action for a writ of mandamus to compel respondents, the board and its members, to certify him as the Democratic candidate for Hamilton County Sheriff on the March 7 primary election ballot, and a judgment declaring R.C. 311.01(B)(9) unconstitutional. Watson also named the Secretary of State as a respondent. The parties filed evidence and briefs pursuant to S.Ct.Prac.R. X(9).

{¶ 7} This cause is now before the court for a consideration of the merits.

_____

*Timothy G. Mara*, for relator.

*Michael K. Allen*, Hamilton County Prosecuting Attorney, and *Gordon M. Strauss*, Assistant Prosecuting Attorney, for respondents Hamilton County Board of Elections and its members.

*Betty D. Montgomery*, Attorney General, *Arthur J. Marziale, Jr.*, and *David S. Timms*, Assistant Attorneys General, for respondent Secretary of State.

*Pierce E. Cunningham* and *Thomas H. Stewart*, urging denial of the writ for *amicus curiae*, Saundra R. Stehlin.

_____

***Per Curiam.***

**{¶ 8}** Watson asserts that he is entitled to a writ of mandamus to compel the board to certify his candidacy for Hamilton County Sheriff on the March 7 primary election ballot. We will set aside the board's decision to uphold the protest and issue the requested writ of mandamus if Watson establishes that the board's decision resulted from fraud, corruption, abuse of discretion, or clear disregard of applicable law. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 179, 685 N.E.2d 502, 504-505.

**{¶ 9}** Watson initially claims that by upholding the protest, the board abused its discretion and clearly disregarded R.C. 311.01(B), which provides:

"On and after January 1, 1988, except as otherwise provided in this section, *no person is eligible to be a candidate for sheriff* and no person shall be elected or appointed to the office of sheriff *unless that person meets all of the following requirements*:

" * * *

"(9) *The person meets at least one of the following conditions*:

"(a) *Has at least two years of supervisory experience as a peace officer at the rank of corporal or above*, or has been appointed pursuant to section 5503.01

3

of the Revised Code and served at the rank of sergeant or above, *in the five-year period ending immediately prior to the qualification date*;

"(b) Has completed satisfactorily at least two years of post-secondary education or the equivalent in semester or quarter hours in a college or university authorized to confer degrees by the Ohio board of regents or the comparable agency of another state in which the college or university is located." (Emphasis added.)

{¶ 10} A candidate to be sheriff can satisfy R.C. 311.01(B)(9) by any of the following three alternatives: (1) have at least two years of supervisory experience as a peace officer at the rank of corporal or above in the five-year period ending immediately prior to the qualification date, (2) be appointed to the Highway Patrol under R.C. 5503.01 and serve at the rank of sergeant or above in the five-year period ending immediately prior to the qualification date, or (3) satisfactorily complete at least two years of post-secondary education or the equivalent in a college or university.

{¶ 11} Watson was never appointed to the Highway Patrol, and he never obtained two years of qualifying post-secondary education. Consequently, in order to comply with R.C. 311.01(B)(9), he had to have "at least two years of supervisory experience as a peace officer at the rank of corporal or above" in the specified five-year period. R.C. 311.01(B)(9)(a) and (H)(1).

{¶ 12} As we recently held, "[u]nder the language used in the pertinent portion of R.C. 311.01(B)(9)(a), in order to be eligible to be a candidate for sheriff, the person must, within the five-year period, have two years of supervisory experience *and that supervisory experience must have been earned when the person served as a peace officer at the rank of corporal or above*." (Emphasis added.) *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 184, 724 N.E.2d 771, 773.

{¶ 13} Here, like the prospective candidate for sheriff in *Wolfe*, Watson did not earn the requisite supervisory experience in the five-year period. Watson

admitted that he never served as a peace officer at the rank of corporal or above. And Watson's reliance on *State ex rel. Hawkins v. Pickaway Cty. Bd. of Elections* (1996), 75 Ohio St.3d 275, 662 N.E.2d 17, is misplaced because in that case, we construed a substantially different previous version of R.C. 311.01(B)(9), which did not require that the supervisory experience be earned as a peace officer at a specified rank. *Wolfe*, 88 Ohio St.3d at 185-186, 724 N.E.2d at 774.

{¶ 14} Therefore, the board applied the unambiguous language of R.C. 311.01(B)(9) and neither abused its discretion nor clearly disregarded the statute by invalidating Watson's candidacy for sheriff. Watson failed to satisfy any of the conditions in R.C. 311.01(B)(9).

{¶ 15} Watson alternatively claims that he is entitled to the requested extraordinary relief in mandamus because the supervisory-experience requirement of R.C. 311.01(B)(9)(a) is unconstitutional. More specifically, Watson claims that his constitutional rights to due process and equal protection as well as his right of free speech are violated because the supervisory-experience requirement serves no legitimate public purpose.

{¶ 16} It is appropriate to consider the merits of Watson's constitutional claim in this mandamus action because an action for a declaratory judgment and prohibitory injunction would not be sufficiently speedy in this expedited election case. See *State ex rel. Purdy v. Clermont Cty. Bd. of Elections* (1997), 77 Ohio St.3d 338, 342, 673 N.E.2d 1351, 1354 ("given the fact that relators are seeking to have their petitions certified and names placed on the ballots for the upcoming November election, the alternative remedy would not be adequate"); *State ex rel. Arnett v. Winemiller* (1997), 80 Ohio St.3d 255, 259, 685 N.E.2d 1219, 1222; *State ex rel. Smart v. McKinley* (1980), 64 Ohio St.2d 5, 6, 18 O.O.3d 128, 129, 412 N.E.2d 393, 394 ("Under normal circumstances, an appellate process would last well past the election").

**{¶ 17}** In evaluating Watson's challenge to R.C. 311.01(B)(9), we are guided by the precept that "[s]tatutes are presumed to be constitutional unless shown beyond a reasonable doubt to violate a constitutional provision." *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 535, 653 N.E.2d 349, 354; *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 352, 639 N.E.2d 31, 33. In other words, all reasonable doubts about the constitutionality of R.C. 311.01(B)(9) must be resolved in its favor. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323, 328.

**{¶ 18}** With these standards in mind, we next consider Watson's First and Fourteenth Amendment claims and related constitutional claims.

**{¶ 19}** R.C. 311.01(B) imposes certain qualifications upon persons who seek to be candidates for sheriff. Legislative bodies like the General Assembly are generally authorized to promulgate qualifications for those who seek public office. *State ex rel. Platz v. Mucci* (1967), 10 Ohio St.2d 60, 61, 39 O.O.2d 48, 49, 225 N.E.2d 238, 240; *State v. Bissantz* (1988), 40 Ohio St.3d 112, 115-116, 532 N.E.2d 126, 130. Nevertheless, these restrictions on candidacy impair the right of electors to vote for the candidate of their choice, which is protected by the Fourteenth Amendment Due Process and Equal Protection Clauses, as well as the right of persons to associate, which is protected by the First Amendment. See, generally, 3 Rotunda & Nowak, Treatise on Constitutional Law: Substance and Procedure (3 Ed.1999) 708, Section 18.32.

**{¶ 20}** Therefore, in order to determine the constitutionality of R.C. 311.01(B)(9), we apply the modified balancing test adopted by the United States Supreme Court in voting- and ballot-access cases. *Purdy*, 77 Ohio St.3d at 342, 673 N.E.2d at 1355; *Burdick v. Takushi* (1992), 504 U.S. 428, 433-434, 112 S.Ct. 2059, 2063-2064, 119 L.Ed.2d 245, 253-254. Under this test, in deciding whether a state election law violates First and Fourteenth Amendment constitutional rights, we must first weigh the character and magnitude of the burden the law imposes on

those rights against the interests the state contends justify that burden, and consider the extent to which the state's interests necessitate the burden. *Anderson v. Celebrezze* (1983), 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547, 558. Regulations imposing severe burdens on voters' and candidates' rights must be narrowly tailored to serve a compelling state interest, while lesser burdens require less exacting review, and a state's important regulatory interests usually justify reasonable, nondiscriminatory restrictions. See *Timmons v. Twin Cities Area New Party* (1997), 520 U.S. 351, 358-359, 117 S.Ct. 1364, 1370, 137 L.Ed.2d 589, 598. Thus, contrary to Watson's contentions, not every statutory restriction limiting the field of candidates need advance a compelling state interest. *Purdy*, 77 Ohio St.3d at 342-343, 673 N.E.2d at 1355.

{¶ 21} In first determining whether R.C. 311.01(B)(9) severely burdens First and Fourteenth Amendment rights, we note that a law severely burdens voting rights if it discriminates based on political content instead of neutral factors or if there are few alternative means of access to the ballot. *Citizens for Legislative Choice v. Miller* (C.A.6, 1998), 144 F.3d 916, 921.

{¶ 22} Here, the requirements of R.C. 311.01(B)(9), including the requirement of two years of supervisory experience as a peace officer at the rank of corporal or above, are content-neutral. In other words, these requirements do not limit "political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Anderson*, 460 U.S. at 792-793, 103 S.Ct. at 1572, 75 L.Ed.2d at 560. R.C. 311.01(B)(9) also does not burden voters or candidates based on " 'the content of protected expression, party affiliation, or inherently arbitrary factors such as race, religion, or gender.' " *Citizens for Legislative Choice*, 144 F.3d at 922, quoting *Bates v. Jones* (C.A.9, 1997), 131 F.3d 843, 847. Candidates for sheriff who do not meet the requirements of R.C. 311.01(B)(9) are not an identifiable, historically protected political group.

{¶ 23} In addition, persons who seek to be a candidate for sheriff have several alternatives. They may seek employment with the Highway Patrol and appointment to the rank of sergeant or above. R.C. 311.01(B)(9)(a). They could instead obtain two years of qualifying post-secondary education. R.C. 311.01(B)(9)(b). Or, finally, prospective candidates could garner the required supervisory experience as a peace officer at the rank of corporal or above. R.C. 311.01(B)(9)(a). Watson did not satisfy any of these alternatives, and his attempt to be promoted to corporal in the Hamilton County Sheriff's Office failed because he did not pass the required promotional examination. And even under these facts, Watson was not precluded from seeking some other public office. See *Citizens for Legislative Choice*, 144 F.3d at 922.

{¶ 24} Therefore, R.C. 311.01(B)(9) imposes an extremely limited burden on candidates like Watson and does not unreasonably interfere with the right of voters to have candidates of their choice placed on the ballot.

{¶ 25} In next evaluating the state's interests, we observe that the sheriff is the chief law enforcement officer in each county in the state, having duties that include preserving the public peace. See *State v. Rouse* (1988), 53 Ohio App.3d 48, 52, 557 N.E.2d 1227, 1231; R.C. 311.07(A). The state has a manifestly important interest in ensuring that the chief law enforcement officers in its eighty-eight counties possess certain minimum qualifications. R.C. 311.01(B)(9) reasonably furthers this interest by requiring either supervisory experience and the demonstration of proficiency in law enforcement skills denoted by promotion to a certain rank (R.C. 311.01[B][9][a]) or academic achievement through two years of qualifying post-secondary education (R.C. 311.01[B][9][b]).

{¶ 26} Our conclusion comports with the recent ruling of a federal district court that upheld the constitutionality of the R.C. 311.01(B)(8) requirement that all candidates for sheriff obtain a basic peace-officer certificate of training from the Ohio Peace Officer Training Council. *Cicchino v. Luse* (Feb. 1, 2000), S.D. Ohio,

No. C-2-99-1174, unreported. In *Cicchino*, the court specifically found that "Ohio has an important, if not compelling, interest in assuring that its top law enforcement officers possess the minimum qualifications necessary to enforce and uphold the laws."

**{¶ 27}** Regarding Watson's claim that the rank requirement unconstitutionally delegates to various law enforcement offices the authority to determine who qualifies to be a candidate for sheriff by varying standards to promote officers to certain ranks, many of his assertions are not supported by sworn testimony or other credible evidence. And even though there was evidence that some divisions of the Hamilton County Sheriff's Office do not have the rank of corporal, there was also evidence that there were ranks above corporal in those divisions, *e.g.*, the rank of sergeant in the corrections division.

**{¶ 28}** As the court noted in *Goforth v. Poythress* (C.A.5, 1981), 638 F.2d 27, at 30, in upholding a comparable education requirement for sheriff's candidates, "[i]t is irrelevant that there may be some who have not obtained a high school diploma or passed an equivalency exam, but who may yet be personally capable of performing adequately the duties of a sheriff in this state" because "[i]t is reasonable to conclude * * * that an education will facilitate the performance of those duties." Similarly, it is reasonable to conclude here that the requirements of R.C. 311.01(B)(9) facilitate the performance of the duties of the chief law enforcement officers of Ohio's counties.

**{¶ 29}** Based on the foregoing, Watson has failed to overcome the strong presumption of constitutionality accorded R.C. 311.01(B)(9). See *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148, 1152. The state's important interests in ensuring that its chief law enforcement officers are qualified justify the reasonable, nondiscriminatory restrictions imposed by R.C. 311.01(B)(9), which imposes only a very limited burden on voters' and candidates' constitutional rights.

{¶ 30} Therefore, Watson is not entitled to the requested extraordinary relief in mandamus. Respondents board and its members did not abuse their discretion or clearly disregard applicable law in denying certification of Watson's candidacy. Accordingly, we deny the writ.

*Writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 31} I would find R.C. 311.01 unconstitutional for the reasons stated in my dissenting opinion in *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 724 N.E.2d 771.

_____