Per Curiam.
{¶ 1} Relators, Thomas Browm, Clifford Henry, and Michael Vandervort,[1] seek a writ of mandamus compelling respondents, the Ashtabula County Board of Elections and its director, Duane Feher, to place Brown’s name on the November 4, 2014 ballot as a judicial candidate for the Ashtabula County Western Area Court. Because relators have not shown a clear entitlement to this extraordinary relief, we deny the writ.
Facts and Procedural History
{¶ 2} Brown ran unsuccessfully to become the Democratic nominee for a seat on the Ashtabula County Common Pleas Court in the Democratic Party primary election held on May 6, 2014.
{¶ 3} On July 21, 2014, he filed nominating petitions to be a candidate for judge on the Ashtabula County Western Area Court in the November 4, 2014 general election. The Ashtabula County Board of Elections, relying solely on R.C. 3513.04, rejected Brown’s petitions.
{¶ 4} Relators filed this action seeking a writ of mandamus to compel the board to certify his candidacy for the Western Area Court, asserting that R.C. 3513.04 is unconstitutional. We permitted Ohio Attorney General Michael DeWine to intervene as a respondent to defend the constitutionality of the statute.
Laches
{¶ 5} The attorney general asserts that relators unreasonably delayed in seeking relief and that this action is barred by the doctrine of laches. He suggests that Brown knew or should have known that he intended to challenge *371 the constitutionality of R.C. 3513.04 on May 6, 2014, when he lost the primary election, and that relators failed to exercise the utmost diligence by not filing suit on July 24, 2014, when Brown first learned that the board would not certify his candidacy.
{¶ 6} “The elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party.” State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections, 14, Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995). Laches may bar relief in an election-related matter if the person seeking relief fails to act with the “ ‘utmost diligence.’ ” State ex rel. Monroe v. Mahoning Cty. Bd. of Elections, 137 Ohio St.3d 62, 2013-0hio-4490, 997 N.E.2d 524, ¶ 30, quoting State ex rel. Fuller v. Medina Cty. Bd. of Elections, 97 Ohio St.3d 221, 2002-Ohio-5922, 778 N.E.2d 37, ¶ 7.
{¶ 7} Relators could not have filed this action on May 6, 2014, when Brown lost the primary election, because relators had no claim for relief until the board of elections refused to place Brown’s name on the ballot. State ex rel. Linnabary v. Husted, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 16 (“Linnabary did not have a claim to assert until [the secretary of state] removed his name from the ballot”). Nor were respondents prejudiced by the failure to file suit on July 24, 2014, when Brown learned that the board would not certify his candidacy. Had relators filed suit at that time, this mandamus action would not have been docketed as an expedited election action, and the case might not have been decided before the September 20, 2014 deadline for sending absentee ballots to military and overseas voters, potentially placing the board in a significantly worse position.
{¶ 8} We therefore reject the claim that laches bars this action.
Mandamus
{¶ 9} The requirements for a writ of mandamus are well established: (1) the relator must demonstrate a clear legal right to relief, (2) the respondent must have a clear legal duty to perform the requested relief, and (3) there must be no adequate remedy in the ordinary course of law. State ex rel. Harris v. Rhodes, 54 Ohio St.2d 41, 374 N.E.2d 641 (1978).
{¶ 10} And as we explained in State ex rel. Pressley v. Indus. Comm., 11 Ohio St.2d 141, 228 N.E.2d 631 (1967),
“the issuance of a writ of mandamus rests, to a considerable extent at least, within the sound discretion of the court to which application for the writ is made. The writ is not demandable as a matter of right, or at least is not wholly a matter of right; nor will it issue unless the relator has a *372 clear right to the relief sought, and makes a clear case for the issuance of the writ. The facts submitted and the proof produced must be plain, clear, and convincing before a court is justified in using the strong arm of the law by way of granting the writ.”
Id. at 161, quoting 35 Ohio Jurisprudence 2d, Discretion as to Issuance, Generally, Section 37, at 285.
{¶ 11} A writ of mandamus is an extraordinary remedy, exercised by this court with caution and issued only when the right is clear. State ex rel. Taylor v. Glasser, 50 Ohio St.2d 165, 166, 364 N.E.2d 1 (1977); State ex rel. Shafer v. Ohio Turnpike Comm., 159 Ohio St. 581, 589, 113 N.E.2d 14 (1953).
{¶ 12} But relators are not only required to prove clear entitlement to relief, they must also overcome the presumption of constitutionality afforded to all acts of the General Assembly and demonstrate beyond a reasonable doubt that R.C. 3513.04 is unconstitutional. State ex rel. Purdy v. Clermont Cty. Bd. of Elections, 77 Ohio St.3d 338, 345-346, 673 N.E.2d 1351 (1997); State ex rel. Watson v. Hamilton Cty. Bd. of Elections, 88 Ohio St.3d 239, 245, 725 N.E.2d 255 (2000) (applying presumption of constitutionality to statute setting forth qualifications for office of sheriff).
{¶ 13} The United States Constitution provides that states may prescribe “[t]he Times, Places and Manner of holding Elections for Senators and Representatives,” Article I, Section 4, cl. 1, and the Supreme Court has recognized that states retain the power to regulate their own elections. Burdick v. Takushi, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).
{¶ 14} To assess the constitutionality of a state election law, the court must first “consider the character and magnitude of’ the claimant’s alleged injury. Anderson v. Celebrezze, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). If the regulation severely restricts voting rights, then strict scrutiny applies and the law must be narrowly tailored to advance a compelling state interest. Burdick at 434. We have explained that “a law severely burdens voting rights if it discriminates based on political content instead of neutral factors or if there are few alternative means of access to the ballot.” Watson at 243. But “not every statutory restriction limiting the field of candidates need advance a compelling state interest,” id., and if the regulation is minimally burdensome and nondiscriminatory, then “ ‘the State’s important regulatory interests are generally sufficient to justify’ the restrictions,” Burdick at 434, quoting Anderson at 788.
{¶ 15} Notably, we applied these standards to a prior version of R.C. 3513.04 in Purdy and upheld the statute against constitutional challenge. At that time, paragraph three of the statute stated: “No person who seeks party nomination *373 for an office or position at a primary election * * * shall be permitted to become a candidate by nominating petition * * * at the following general election for any office by nominating petition or by declaration of intent to be a write-in candidate.” Sub.S.B. No. 261, 146 Ohio Laws, Part VI, 10605, 10608. We concluded that this statute imposed only a “very limited” and slight burden on potential candidates, Purdy, 77 Ohio St.3d at 344, 673 N.E.2d 1351, “[did] not unreasonably interfere with the right of voters to have candidates of their choice placed on the ballot,” id., and was nondiscriminatory, id. at 343, and we explained that “Ohio clearly has a legitimate interest in preventing potential conflicts among party members, an interest in preventing the possibility of voter confusion, and an interest in preventing candidacies that may conceivably be prompted by short-range goals,” id. at 346.
{¶ 16} Following our decision in Purdy, the General Assembly enacted a number of amendments to R.C. 3513.04, and the statute now states:
No person who seeks party nomination for an office or position at a primary election * * * shall be permitted to become a candidate by nominating petition * * * at the following general election for any office other than the office of member of the state board of education, office of member of a city, local, or exempted village board of education, office of member of a governing board of an educational service center, or office of township trustee.
(Emphasis added for new material since 1997.)
{¶ 17} Relators maintain that these amendments cannot survive strict scrutiny, because these provisions arbitrarily and invidiously discriminate against Brown and similarly situated individuals and severely burden fundamental rights to associate and vote by limiting the field of candidates available to voters. And, they contend, the restrictions imposed by the statute are purposeless; relators claim that any state interest in regulating partisan elections does not apply to candidates for nonpartisan office, that Brown’s candidacy was not short-sighted, and that there is no chance of voter confusion or intraparty conflict in these circumstances.
{¶ 18} The attorney general responds that our decision in Purdy provides the rule of decision in this case, that the rational-basis test should guide our analysis, and that the legislature could reasonably conclude that “the risks associated with second-chance/sore-loser candidacies (and the overall effect on Ohio’s electoral integrity) are lessened within the context of educational and/or highly localized positions” and that “there was more need to encourage and incentivize candidacy for such positions.”
*374 {¶ 19} It is not clear on this record that the amendments enacted in 1998 are unconstitutional solely because the statute now permits unsuccessful primary candidates the opportunity to file nominating petitions for some nonpartisan offices — member of the state board of education, member of a city, local, or exempted village board of education, member of a governing board of an educational service center, or township trustee. These amendments increase voter access and lessen the burdens on candidates who have run in a primary and who have elected to refile for the above designated offices. See McDonald v. Bd. of Election Commrs. of Chicago, 394 U.S. 802, 811, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) (Illinois statute allowing some but not all inmates to receive absentee ballots was constitutional, and the fact “[t]hat Illinois has not gone still further, as perhaps it might, should not render void its remedial legislation”). And the statute remains nondiscriminatory; although these amendments may treat offices differently, all candidates are treated equally. Thus, any burden on voting rights remains, as the court in Purdy put it, “slight” and “very limited,” and the state interest required to justify it is correspondingly small.
{¶ 20} There may be legitimate reasons that motivated the General Assembly to designate certain offices for different treatment, and we lack the benefit of a sufficiently developed record in this expedited election matter to definitively state that the legislature lacked any basis for its actions. For example, in this instance, having lost a primary election for common pleas court judge, relator Brown seeks the opportunity to run for a different judicial office at the general election held in the same year, which may be confusing to voters and provide an advantage over other judicial candidates; but because there are no primary elections for state board of education, there is no possibility of voter confusion in that instance. See R.C. 3513.259 (“Nominations of candidates for the office of member of the state board of education shall be made only by nominating petition”). These are policy considerations that belong with the General Assembly, not the judiciary.
{¶ 21} It is not sufficient for relators to cast doubt on the constitutionality of this statute, nor is it the attorney general’s burden to prove the statute constitutional; rather, relators must show beyond a reasonable doubt that R.C. 3513.04 is unconstitutional. This is so, because “[t]he ability to invalidate legislation is a power to be exercised only with great caution and in the clearest of cases.” Yajnik v. Akron Dept. of Health, Hous. Div., 101 Ohio St.3d 106, 2004-Ohio-357, 802 N.E.2d 632, ¶ 16.
{¶ 22} The opinion concurring in the judgment misses the point. Relators seek extraordinary relief in this court and can obtain it only if they demonstrate clear entitlement to the writ. The standards articulated by the Supreme Court in Anderson and Burdick that apply in civil litigation challenging the constitutionali *375 ty of ballot restrictions inform our analysis, but those cases are not writ actions and do not involve the unique burdens that control the adjudication of original actions in this court. Otherwise, this case would present nothing more than an action seeking a declaratory judgment that the statute is unconstitutional, and we lack original jurisdiction to grant a declaratory judgment. State ex rel. Ministerial Day Care Assn. v. Zelman, 100 Ohio St.3d 347, 2003-Ohio-6447, 800 N.E.2d 21, ¶ 22. Rather, the function of mandamus is to compel the performance of a present existing duty. State ex rel. Willis v. Sheboy, 6 Ohio St.3d 167, 451 N.E.2d 1200 (1983), paragraph two of the syllabus.
{¶ 23} The opinion concurring in the judgment conflates the legal standards at issue here. Although it purports to apply the principles of the ballot-access cases in determining that R.C. 3513.04 is unconstitutional, it points to nothing in the post-1998 amendments to the statute that burdens the right to vote or access to the ballot. And it presumably agrees that any burden on Brown’s candidacy is outweighed by the state’s legitimate interests, because it would uphold the ballot restrictions' if severed from the posW1998 amendments. Rather, the opinion concurring in judgment purports to resolve an equal protection claim by severing language from the statute, and equal protection claims are subject to rational-basis review because “there is no fundamental right to run for public office.” State ex rel. Keefe v. Eyrich, 22 Ohio St.3d 164, 165, 489 N.E.2d 259 (1986). This is the reason why relators have the burden to do more than simply cast doubt on the constitutionality of the statute to succeed.
{¶ 24} For these reasons, relators have not overcome the presumption of constitutionality, nor have they demonstrated that R.C. 3513.04 is unconstitutional beyond a reasonable doubt. Hence, they have not shown a clear entitlement to extraordinary relief. No writ will issue in such doubtful circumstances. Accordingly, we deny the requested writ of mandamus.
Writ denied.
O’Donnell, Kennedy, and French, JJ., concur.
O’Connor, C.J., and Lanzinger, J., concur in judgment only.
Pfeifer, J., dissents.
O’Neill, J., not participating.

. Henry and Vandervort are registered voters in Ashtabula County.