[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Trumbull Cty. Republican Cent. Commt. v. Trumbull Cty. Bd. of Elections,* Slip Opinion No. 2022-Ohio-3268.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3268

THE STATE EX REL. TRUMBULL COUNTY REPUBLICAN CENTRAL COMMITTEE ET AL. *v.* TRUMBULL COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Trumbull Cty. Republican Cent. Commt. v. Trumbull Cty. Bd. of Elections,* Slip Opinion No. 2022-Ohio-3268.]**

*Mandamus—Elections—R.C. 3513.04—R.C. 3513.31(I)—Candidate nominated by her political party's central committee under R.C. 3513.31(I) to run for general election to fill a common-pleas-court judgeship that was vacated by resignation of the sitting judge 100 days before the general election not allowed to have her name placed on the ballot under R.C. 3513.04 because she lost a bid for her political party's nomination in the preceding primary election for a different judicial office—Writ denied.*

(No. 2022-1055—Submitted September 14, 2022—Decided September 16, 2022.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} Relators, Trumbull County Republican Central Committee and Sarah Thomas Kovoor, seek a writ of mandamus ordering respondents, Trumbull County Board of Elections and its director Stephanie N. Penrose (collectively, "the board") and Secretary of State Frank LaRose, to place Kovoor's name on the November 8, 2022 general-election ballot for the office of judge of the Trumbull County Court of Common Pleas. Because R.C. 3513.04 bars Kovoor from being a candidate for the office she seeks, we deny the writ.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} Kovoor was an unsuccessful candidate for the Republican party's nomination for a seat on the Eleventh District Court of Appeals in the May 3, 2022 primary election. At some point after Kovoor's primary-election loss, Judge Peter Kontos announced his retirement from the Trumbull County Court of Common Pleas, effective July 31, 2022. Judge Kontos's resignation created a vacancy on the common pleas court for an unexpired term.

{¶ 3} Judge Kontos's resignation was effective 100 days before the November 8 general election, triggering the application of R.C. 3513.31(I). Under that statute, the central committees of the Trumbull County Republican and Democratic parties were each responsible for selecting their party's candidates to run in the general election for the unexpired term of the judicial office vacated by Judge Kontos. On August 14, Kovoor was selected as the Republican party's candidate. Kovoor accepted the party's nomination.

{¶ 4} On August 16, Penrose emailed the Trumbull County Prosecutor's Office, requesting a legal opinion on whether Kovoor was permitted to run for the judicial office vacated by Judge Kontos. Penrose explained that R.C. 3513.04 appeared to disqualify Kovoor from running for the office because she had run unsuccessfully for a different judicial office in the May 3 primary. R.C. 3513.04 provides:

> *No person who seeks party nomination for an office or position at a primary election by declaration of candidacy \* \* \* shall be permitted to become a candidate* by nominating petition, including a nominating petition filed under section 3517.012 of the Revised Code, by declaration of intent to be a write-in candidate, or *by filling a vacancy under section 3513.31 of the Revised Code at the following general election for any office* other than the office of member of the state board of education, office of member of a city, local, or exempted village board of education, office of member of a governing board of an educational service center, or office of township trustee.

(Emphasis added.)

{¶ 5} On August 17, the prosecutor's office sent a letter to Penrose, opining that R.C. 3513.04 disqualified Kovoor from being a candidate for the vacated judicial office. Then, on August 18, a registered voter in Trumbull County filed with the board a protest against Kovoor's candidacy, also citing R.C. 3513.04.

{¶ 6} On August 19, the board held a special meeting to certify the candidates and issues that would appear on the November ballot. Two board members voted to certify Kovoor's candidacy, and two members voted against certification. The board submitted the matter to Secretary LaRose for his tiebreaking vote. *See* R.C. 3501.11(X).

{¶ 7} Relators commenced this expedited election matter on August 24, before Secretary LaRose announced his decision. In the complaint, relators pray for a writ of mandamus (1) ordering Secretary LaRose to render a decision immediately to break the tie vote of the board and (2) ordering the board and Secretary LaRose to certify Kovoor to the November 2022 general-election ballot.

This court set an accelerated schedule for the parties' submission of evidence and merit briefs. 167 Ohio St.3d 1495, 2022-Ohio-2952, ___ N.E.3d ___.

{¶ 8} On August 31, after respondents' answers were filed, Secretary LaRose voted against certifying Kovoor as a candidate. In a letter to the board explaining the rationale for his tiebreaking vote, the secretary noted that "[c]ourts, including the Ohio Supreme Court, have reviewed [R.C. 3513.04] over the years and found that its language is straightforward, mandatory, and constitutional." The secretary concluded that because Kovoor had unsuccessfully sought a party nomination for a court of appeals' judgeship in the May 3 primary election, R.C. 3513.04 prohibited her from becoming a candidate for common-pleas-court judge in the November 8 general election.

{¶ 9} The parties have submitted their evidence and merit briefs, and the case is ripe for our decision.

## II. ANALYSIS

{¶ 10} To be entitled to a writ of mandamus, relators must establish by clear and convincing evidence that (1) they have a clear legal right to the requested relief, (2) respondents are under a clear legal duty to perform the requested act, and (3) relators have no adequate remedy in the ordinary course of the law. *State ex rel. Linnabary v. Husted*, 138 Ohio St.3d 535, 2014-Ohio-1417, 8 N.E.3d 940, ¶ 13. Because the general election is less than two months away, relators lack an adequate remedy in the ordinary course of the law. *See State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 18-19. For the remaining requirements, the standard is whether the board or secretary engaged in fraud, corruption, or abuse of discretion or acted in clear disregard of applicable legal provisions. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 7.

{¶ 11} One aspect of relators' request for relief is moot. Relators' complaint sought, in part, a writ of mandamus ordering Secretary LaRose "to render

a decision immediately on the tie vote" regarding Kovoor's candidacy. After the filing of the complaint, Secretary LaRose performed that act, thereby rendering that portion of relators' case moot. *See State ex rel. Murray v. Scioto Cty. Bd. of Elections*, 127 Ohio St.3d 280, 2010-Ohio-5846, 939 N.E.2d 157, ¶ 54. What remains for us to decide is whether relators are entitled to a writ of mandamus ordering the placement of Kovoor's name on the ballot as a candidate for Trumbull County Court of Common Pleas judge.

### A. Text of R.C. 3513.04 Bars Kovoor's Candidacy

{¶ 12} Relators do not dispute that Kovoor is not permitted to be a candidate for common-pleas-court judge under a plain reading of R.C. 3513.04. That statute prohibits a candidate (with specified exceptions not implicated here) from running for an office in the general election if the candidate unsuccessfully ran for office in the preceding primary election. *State ex rel. Brinda v. Lorain Cty. Bd. of Elections*, 115 Ohio St.3d 299, 2007-Ohio-5228, 874 N.E.2d 1205, ¶ 26. "The language of R.C. 3513.04 is plain and unambiguous and conveys a clear and definite meaning." *State ex rel. Purdy v. Clermont Cty. Bd. of Elections*, 77 Ohio St.3d 338, 340, 673 N.E.2d 1351 (1997). And under that "clear and definite meaning," Kovoor is barred from being a candidate for judge in the November election.

### B. R.C. 3513.31(I) Does Not Override R.C. 3513.04

{¶ 13} Despite the unambiguous language of R.C. 3513.04, relators argue that Kovoor's candidacy is *not* prohibited, because it involves a political party's choice of candidate for election to an unexpired term of office under R.C. 3513.31(I). That statute provides:

> If a person holding an elective office dies or resigns subsequent to the one hundred fifteenth day before the day of a primary election and prior to the eighty-sixth day before the day of the next general election, and if, under the laws of this state, a person may be elected

at that general election to fill the unexpired term of the person who has died or resigned, the appropriate committee of each political party * * * may select a person as the party candidate for election for such unexpired term at that general election, and certify the person's name to the appropriate election official not later than four p.m. on the eighty-sixth day before the day of that general election, or on the tenth day following the day on which the vacancy occurs, whichever is later. * * * *Thereupon the name shall be printed as the party candidate under proper titles and in the proper place on the proper ballots for use at the election. If a person has been nominated in a primary election or nominated by petition under section 3517.012 of the Revised Code, the authorized committee of that political party shall not select and certify a person as the party candidate.*

(Emphasis added.) R.C. 3513.31(I).

{¶ 14} Relators make two arguments that R.C. 3513.31(I) overrides R.C. 3513.04. First, they argue that neither the board nor Secretary LaRose has discretion to keep Kovoor's name off the ballot, because of the mandatory language in the next-to-last sentence of R.C. 3513.31(I). Second, relators contend that the last sentence of R.C. 3513.31(I) shows a legislative intent to allow primary-election candidates who lost the bid for their party's nomination, like Kovoor, to be nominated for a different office, despite R.C. 3513.04. Both arguments are wrong as a matter of statutory interpretation.

*1. The board and the secretary may examine a candidate's qualifications for the ballot*

{¶ 15} Because of the language in R.C. 3513.31(I)'s penultimate sentence—"[t]hereupon the name *shall be printed* as the party candidate" (emphasis added)— relators contend that there is *no* certification required or permitted by the board of elections and that the board *must* place on the ballot the name of the candidate chosen by the party central committee. According to relators, the General Assembly removed the role of the board (and the secretary) in certifying the candidacy of persons who have been nominated for an unexpired term of office that becomes vacant due to the death or resignation of an officeholder less than 150 days before a primary. Relators argue that in this situation, the General Assembly allows the political parties to select candidates who would otherwise be ineligible for election under R.C. 3513.04.

{¶ 16} Relators' argument is flawed because relators read R.C. 3513.31(I) in isolation, creating conflict with R.C. 3513.04 where none exists. *See Riffle v. Physicians & Surgeons Ambulance Serv., Inc.,* 135 Ohio St.3d 357, 2013-Ohio-989, 986 N.E.2d 983, ¶ 21 (noting that it is a settled rule of statutory interpretation that statutes must be construed together to avoid conflict). Read together, these statutes are not in conflict. R.C. 3513.04 expressly refers to R.C. 3513.31: it says that *no person* who sought a party nomination at a primary election may become a candidate "by filling a vacancy under section 3513.31 of the Revised Code at the following general election for any office" (except for certain offices not implicated here). Thus, the General Assembly has made R.C. 3513.04 applicable to candidates who have been chosen by party central committees to fill vacancies under R.C. 3513.31(I). If the General Assembly had intended to exempt vacancies arising under R.C. 3513.31(I) from the reach of R.C. 3513.04, it could have expressly done so, just as it enacted exceptions for other offices. *See State ex rel. Stoll v. Logan*

*Cty. Bd. of Elections*, 117 Ohio St.3d 76, 2008-Ohio-333, 881 N.E.2d 1214, ¶ 39 (the court cannot add an exception that is not contained in the statutory language).

### 2. *The last sentence of R.C. 3513.31(I)*

{¶ 17} Relators also contend that the last sentence of R.C. 3513.31(I) expressly prohibits a political party central committee from selecting a primary-election *winner* to run for an unexpired term of a vacated elective office but that it does not likewise prohibit selecting a primary-election *loser*. Relators contend that because that sentence instructs whom a central committee shall *not* select as its party's candidate (someone who has been nominated in a primary election), the statute allows a central committee to select *anyone else*, including someone covered by the prohibition in R.C. 3513.04. Like relators' argument analyzed above, this argument relies on flawed statutory interpretation.

{¶ 18} R.C. 3513.04 and 3513.31(I), when read together, do not support relators' position. R.C. 3513.04 prohibits a candidate who, like Kovoor, unsuccessfully sought a party nomination for a judicial office in a primary election from becoming the party's candidate for another judicial office in the following general election. R.C. 3513.31(I) simply makes clear that a party central committee may not choose a *winner* from the previous primary election to be its party's nominee to fill a vacancy for an unexpired term of office in the ensuing general election. In other words, the last sentence of R.C. 3513.31(I) ensures that a party central committee will not select someone who is already a general-election candidate for another office. Read together, R.C. 3513.04 and 3513.31(I) are consistent. But relators advocate an interpretation that would put those statutes in conflict—and that is an interpretation this court must avoid. *See State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 8 (courts must "harmonize provisions unless they irreconcilably conflict").

{¶ 19} For these reasons, we reject relators' statutory-interpretation arguments. R.C. 3513.04 applies to Kovoor's candidacy and renders her ineligible

to run for the unexpired term of the judicial office vacated by Judge Kontos in the November 8 general election.

### C. R.C. 3513.04 Is Constitutional As Applied to Kovoor's Candidacy

{¶ 20} Relators also argue that R.C. 3513.04 is unconstitutional as applied to Kovoor's candidacy and that they, therefore, have a clear legal right to have Kovoor's name placed on the November general-election ballot. Although relators do not identify which provisions of the United States or Ohio Constitutions are implicated by their claim of unconstitutionality, their briefs cite the following cases involving challenges based on the First and Fourteenth Amendments to the United States Constitution: *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Purdy*, 77 Ohio St.3d at 342, 673 N.E.2d 1351; and *State ex rel. Brown v. Ashtabula Cty. Bd. of Elections*, 142 Ohio St.3d 370, 2014-Ohio-4022, 31 N.E.3d 596 (plurality opinion).

{¶ 21} Like all statutes enacted by the General Assembly, R.C. 3513.04 is presumed to be constitutional, and relators must demonstrate beyond a reasonable doubt that the statute is unconstitutional. *State ex rel. Watson v. Hamilton Cty. Bd. of Elections*, 88 Ohio St.3d 239, 242, 725 N.E.2d 255 (2000).[1] Relators contend that this court should apply strict scrutiny in evaluating the constitutionality of R.C. 3513.04 because the statute "severely restricts" voting and ballot-access rights. And relators contend that under strict scrutiny, the statute does not pass muster; they argue that R.C. 3513.04 serves "no legitimate public interest" by prohibiting Kovoor from appearing on the general-election ballot for common-pleas-court

---

1. Relators argue that R.C. 3513.04 infringes on "a fundamental constitutional right" and therefore should be presumed *un*constitutional. In support of this asserted presumption, relators cite *Wisconsin v. Pelican Ins. Co. of New Orleans*, 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888), *overruled on other grounds by Milwaukee Cty. v. M.E. White Co.*, 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935), and the dissenting opinion of a single justice in *Ohio Grocers Assn. v. Levin*, 123 Ohio St.3d 303, 2009-Ohio-4872, 916 N.E.2d 446, ¶ 70-81 (Pfeifer, J., dissenting). Relators do not develop an argument explaining how *Pelican Ins. Co. of New Orleans* supports presuming a statute to be unconstitutional or why we should abandon our settled jurisprudence that acts of the General Assembly are presumed to be constitutional.

judge since the judicial-office vacancy created by Judge Kontos's resignation did not occur until *after* the primary election.

{¶ 22} When examining the constitutionality of a state election law, we must "consider the character and magnitude of" the alleged injury. *Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). If the state law in question *severely* restricts voting rights, then strict scrutiny applies: the law must be narrowly tailored to advance a compelling state interest. *Burdick* at 434. "[A] law severely burdens voting rights if it discriminates based on political content instead of neutral factors or if there are few alternative means of access to the ballot." *Watson* at 243, citing *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir.1998). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Burdick* at 434, quoting *Anderson* at 788.

{¶ 23} We have twice used the *Anderson*/*Burdick* balancing test to not only uphold R.C. 3513.04's constitutionality but also to reject the application of strict scrutiny to challenges of its constitutionality. In *Purdy*, 77 Ohio St.3d at 343, 673 N.E.2d 1351, we explained that R.C. 3513.04 "does not discriminate between those who are and those who are not affiliated with a party, nor does it create burdensome ballot access requirements." The restriction placed on candidates—prohibiting those who ran and lost in a primary election from running for any other office in the ensuing general election—imposes "only a very limited burden * * * and does not unreasonably interfere with the right of voters to have candidates of their choice placed on the ballot." *Id*. at 344. The statute does not prevent a candidate from running for an elective office; it merely prevents a person from running for more than one elective office in an election cycle. Balanced against that minimal burden, we found that Ohio has a legitimate interest in preventing (1) "potential conflicts

among party members," (2) "the possibility of voter confusion," and (3) "candidacies that may conceivably be prompted by short-range goals." *Id.* at 346.

{¶ 24} When R.C. 3513.04 was challenged again almost 18 years after this court's decision in *Purdy*, five members of this court again declined to apply strict scrutiny. *See Brown*, 142 Ohio St.3d 370, 2014-Ohio-4022, 31 N.E.3d 596, at ¶ 19 (plurality opinion); *id.* at ¶ 30-41 (O'Connor, C.J., concurring in judgment only, and Lanzinger, J., joining the concurrence in judgment only).[2]  In *Brown*, we considered a constitutional challenge to a version of R.C. 3513.04 that was amended after *Purdy*; the amended version included exceptions allowing candidates to run for certain nonpartisan or local offices in the general election even if they had lost a bid for elective office in the preceding primary. *Brown* at ¶ 16. The plurality opinion noted that "the statute remain[ed] nondiscriminatory" and, thus, "any burden on voting rights remain[ed], as the court in *Purdy* put it, 'slight' and 'very limited,' and the state interest required to justify it [was] correspondingly small." *Brown* at ¶ 19, quoting *Purdy* at 344, 346.  The plurality opinion went on to uphold the constitutionality of R.C. 3513.04. *Id.* at ¶ 24.

{¶ 25} Relators point to nothing in the current version of R.C. 3513.04 that would convince us to depart from the holdings in *Purdy* and *Brown* and to apply strict scrutiny to the constitutional challenge presented in this case.  And as to the balancing of the statute's burdens against the state's interests, relators do not distinguish *Purdy* or *Brown* from the facts of this case in any meaningful way. Rather, relators argue in conclusory fashion that barring Kovoor's candidacy advances no legitimate public interest.

{¶ 26} But the secretary asserts the same governmental interests in this case that were found to be sufficient in *Purdy* and *Brown* to outweigh the minimal

---

2. The opinion concurring in judgment only, though it applied a different analysis than the plurality opinion, did not take the position that strict scrutiny applied. *See Brown* at ¶ 30-41 (O'Connor, C.J., concurring in judgment only).

burden imposed by the statute.  For example, the secretary notes that R.C. 3513.04 advances Ohio's interest in "minimizing voter confusion."  Voters may not necessarily understand which candidates are running for which offices, and in cases like this—in which the candidate is running for the same type of elective office that she unsuccessfully sought in the primary (here, a judicial office)—the risk of voter confusion is heightened.  *See Brown* at ¶ 20.  The secretary also argues that R.C. 3513.04 reduces the risk of intraparty conflict, which is also an interest we have previously found to be legitimate.  *See Purdy*, 77 Ohio St.3d at 344, 346, 673 N.E.2d 1351.  As the secretary explains, "the Republican voters of the Eleventh District Court of Appeals preferred another candidate to Relator Kovoor.  By nominating Relator Kovoor for a different office, Relator Trumbull County Republican Central Committee substituted its judgment for the will of the voters, which could lead to intra-party conflict or the perception thereof."

{¶ 27} If there are reasons that these state interests should not apply to Kovoor's candidacy, relators have not provided them.  And it is generally not our role to develop a party's arguments.  *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19.  On the record before us, relators have not shown that R.C. 3513.04 is unconstitutional as applied to Kovoor's candidacy.

### D.  Claim of Open-Meetings Violation Is Not Before this Court

{¶ 28} Relators also contend that the board violated the Open Meetings Act ("OMA"), R.C. 121.22, by seeking the prosecutor's opinion on the applicability of R.C. 3513.04 to Kovoor's candidacy.  Relators contend that the board did not seek the prosecutor's opinion in a public meeting, rendering the action invalid under R.C. 121.22(H).

{¶ 29} To the extent relators seek relief under the OMA, that claim is not properly before us.  Though mandamus relief is appropriate under some circumstances to compel compliance with the OMA, *see, e.g.*, *State ex rel. Long v.*

*Cardington Village Council*, 92 Ohio St.3d 54, 748 N.E.2d 58 (2001), relators' complaint does not seek any such mandamus relief. Relators seek only a writ of mandamus compelling placement of Kovoor's name on the November ballot. Whether the board violated the OMA in seeking a legal opinion from the prosecutor's office before deciding the validity of Kovoor's candidacy does not inform the issue whether Kovoor has a clear right to appear as a candidate for Trumbull County Court of Common Pleas judge on the November general-election ballot.

### III.  CONCLUSION

{¶ 30} Relators have not shown a clear legal right to have Kovoor's name placed on the general-election ballot as a candidate for judge of the Trumbull County Court of Common Pleas. We deny the writ of mandamus.

Writ denied.

DONNELLY, STEWART, and BRUNNER, JJ., concur.

DEWINE, J., concurs in Parts I, II(A), II(B), II(D), and III of the opinion and concurs in the judgment.

O'CONNOR, C.J., and KENNEDY and FISCHER, JJ., concur in judgment only.

_____

Kovoor Law, L.L.C., and Sarah Thomas Kovoor, for relators.

Dennis Watkins, Trumbull County Prosecuting Attorney, and William J. Danso, Assistant Prosecuting Attorney, for respondents Trumbull County Board of Elections and Stephanie N. Penrose.

Dave Yost, Attorney General, and Julie M. Pfeiffer, Ann Yackshaw, and Allison D. Daniel, Assistant Attorneys General, for respondent Secretary of State Frank LaRose.

_____